STATE of Maine

v.

David W. GRIFFIN.

Supreme Judicial Court of Maine.

Submitted on Briefs March 18, 1994.

Decided May 5, 1994.

---

Michael Povich, Dist. Atty., Ellsworth, for State.

Raymond Williams, Roy, Beardsley & Williams, Ellsworth, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS,* RUDMAN and DANA, JJ.

CLIFFORD, Justice.

David W. Griffin appeals from his convictions of operating under the influence (OUI), 29 M.R.S.A. § 1312–B (Pamph.1993) (Class D), and terrorizing, 17–A M.R.S.A. § 210 (1983) (Class D), entered in the Superior Court (Hancock County, *Marsano, J.*) follow-

---

* Collins, J. participated in the initial conference, but retired before this opinion was adopted.

ing a jury trial. Griffin contends that he was entitled to a mistrial because of a discovery violation by the State, that the trial court erred in admitting evidence of other bad acts, and that the evidence was insufficient to sustain the convictions. Finding no error, we affirm the judgments.

Griffin was arrested following a traffic stop on Route 182 in Hancock in the early morning of July 19, 1992. Deputy Sheriff Robert Carter, the arresting officer, had been informed by an off-duty officer that Griffin's vehicle was being operated erratically, and had himself observed the erratic operation of Griffin's vehicle. Griffin had an odor of alcohol on his breath, had red, glassy eyes, and admitted to having consumed one or two beers. He refused to perform field sobriety tests that he characterized as "circus tricks." Griffin was also unable to get past the letter "R" when asked to recite the alphabet, and stumbled when he stepped out of his car.

According to Carter, during the time that Griffin was still in his car, he told Carter that "you guys have just been waiting to be able to get me." Carter asserts that he had never met Griffin before. Carter arrested Griffin and drove to the Hancock County Jail in Ellsworth with Griffin in the front seat of the cruiser, not handcuffed or otherwise under restraint. Carter testified that Griffin made several significant statements to him during the ride to the jail: Griffin told Carter that "I know where you live," that Carter was "taking his license away and that was [Griffin's] livelihood, and that because of it he would have to kill [Carter] for it," that "I'm a Vietnam Vet and I know how to do these types of things," and that if Carter was not at home when Griffin arrived, Griffin would kill Carter's wife. According to Carter, Griffin characterized these statements as a "promise" rather than a "threat."

Carter testified that he took these threats seriously because Griffin lived nearby, because Griffin's demeanor suggested that he was serious, and because Carter had never

told Griffin that he had a wife. Carter testified that he was "scared" and "shaken up" by the threats and that he had lost sleep over the incident because his wife was eight months pregnant at the time.

At the jail, Griffin refused to take a breath test. He refused to sign the form indicating that he was not submitting to the required chemical testing. According to Julius Luck, a corrections officer at the jail, Griffin smelled strongly of alcohol, was "slightly unsteady," and "seemed pretty angry both with Officer Carter and with us." According to Luck, at the jail Griffin renewed his threat to harm Carter and noted that "they were neighbors and that he wouldn't have any problem finding him."[1]

Complaints issued in the District Court charging Griffin with OUI and terrorizing. Griffin requested jury trials, and the matters were removed to the Superior Court and consolidated. At no time did Griffin make a request for discovery pursuant to M.R.Crim.P. 16(b). At the trial, during the testimony of Carter, Griffin moved for a mistrial because of the State's alleged failure to provide discovery as to Carter's testimony about the effects of Griffin's threats on Carter. The court denied the motion. The jury returned verdicts of guilty and Griffin filed a timely notice of appeal.

### I.

Carter testified that after the incident with Griffin, he was "scared and went home and advised [his] wife of it." He stated that his wife was eight months pregnant at the time, and "stays home alone at night while I work." He noted that he had trouble sleeping for a "week or two" after the incident, and "slept with a gun at our bedside and . . . woke up all hours of the night to every noise."

On appeal Griffin renews his contention that the State's failure to inform him of

1. Griffin's version of events differs significantly from the testimony of Carter and Luck. According to Griffin, it was actually Carter who was making threats as he conducted the arrest.

Carter's testimony about fearing for himself and his wife constitutes a discovery violation. Griffin argues that the disputed testimony was strongly prejudicial and inflammatory, citing Rule 16(b), governing discovery on request, despite his concession at trial that he never made such a request. Carter's testimony as to his reaction to Griffin's threats is not subject to automatic discovery pursuant to M.R.Crim.P. 16(a). Although Carter's statement was most likely discoverable pursuant to Rule 16(b),[2] Griffin never made such a request. Because there was no request, the State's use of Carter's statement without informing Griffin of the statement prior to trial does not constitute a discovery violation.

## II.

■ Griffin also contends that the testimony of corrections officer Julius Luck that Griffin also communicated his threat to Carter during a conversation with Luck, constitutes evidence of another uncharged criminal offense and should have been excluded. We disagree that the testimony was improperly admitted.

The statute setting forth the elements of terrorizing makes clear that the threat in question may be communicated directly to the intended victim or to a third party.[3] Luck's testimony was directly relevant to prove the crime with which Griffin was charged. Even if Luck's testimony could be characterized as describing an entirely separate allegation of terrorizing, evidence of other crimes *is* admissible on the questions of motive, plan, knowledge, and intent. M.R.Evid. 404 advisers' note; *see* Field & Murray, *Maine Evidence* § 404.4 at 4–44 (3d ed. 1992) (describing the "sweep" of the doc-

trine that evidence of other bad acts is admissible on questions other than the character or criminal propensity of the defendant). Luck's testimony went decisively to the questions of Griffin's motive to threaten Carter, his knowledge of Carter and the previously communicated threat, and his intent to terrorize the police officer.

## III.

■ Griffin contends that the evidence is insufficient both to prove that his ability to drive had been affected by intoxicating liquor, and to sustain the conviction of terrorizing. These contentions lack merit. In reviewing challenges to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to decide whether a factfinder could find every element of the criminal charges beyond a reasonable doubt. *State v. Ho Tai,* 629 A.2d 594, 595 (Me.1993). Both officers who stated that they saw Griffin's car testified that he was operating erratically. Carter testified as to the smell of alcohol on Griffin's breath and his inability to recite the alphabet. Luck made similar observations at the jail. Moreover, Griffin's failure to submit to the required chemical testing was specifically admissible on the question whether he was under the influence, 29 M.R.S.A. § 1312(8) (Pamph.1993). Although Griffin contends that it was actually he who was threatened by Carter, the testimony of Carter and Luck provides an ample basis from which the jury could have concluded that Griffin communicated a threat of violence to Carter, and that the natural and probable consequence of the threat had been to place Carter in reasonable fear that the crime would be committed. The evidence is sufficient to sustain the convictions.

---

**2.** Statements of witnesses contained in police reports are subject to Rule 16(b) discovery. *See* M.R.Crim.P. 16(b)(2)(D).

**3.** 17–A M.R.S.A. § 210 provides in pertinent part:

1. A person is guilty of terrorizing if he communicates to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the communication is made or another,

and the natural and probable consequence of such a threat, whether or not such consequence in fact occurs, is:

A. To place the person to whom the threat is communicated or the person threatened in reasonable fear that the crime will be committed.

Subsection (2) provides that violation of this provision is a Class D crime.

The entry is:

Judgments affirmed.

All concurring.