STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CR-04-189
JLH - PEN. 5/4 2004

State of Maine

FILED & ENTERED
SUPERIOR COURT

MAY 0 4 2004

PENOBSCOT COUNTY

v.

Order (Motion to Suppress)

DONALD L. C
LAW

William K. Baker III

MAY 2 1 2004

Hearing was held this date on the defendant's motion to suppress. Counsel for the defendant was present. Without objection, the defendant was absent from the hearing but appeared through his attorney.

The remaining question generated by the evidence and raised by the defendant is whether Old Town Officer Renzullo had articulable suspicion to stop the vehicle operated by the defendant. From the totality of the evidence, the court concludes that the state has proven the existence of articulable suspicion to support the stop. Renzullo testified that she passed the defendant's oncoming vehicle on Stillwater Avenue. After the vehicles passed, she observed in her rear-view mirror that the rear plate light on the defendant's vehicle was not illuminated.[1] She reversed direction and stopped the defendant, who pulled into a restaurant parking lot in response to the cruiser's emergency lights. The only basis for the stop was the vehicle defect.

The defendant argues that it was impossible for Renzullo to be able to have seen that the rear plate light was not working. To the court, the most likely impediment to her ability to make this observation was the simple fact that she was heading in a direction opposite the defendant's and was looking in a rear-view mirror. The relative speed of the

---

[1] As is discussed later in this order, there are two lights that illuminate the rear registration plate on the vehicle operated by the defendant. Approximately three weeks later, one of those two lights was operating. The court construes Renzullo's testimony to be that neither of the rear plate lights was working, which would constitute a violation of 29-A M.R.S.A. § 1909. Such a violation would justify a stop of the offending vehicle, and the defendant does not argue otherwise here.

1

vehicles was 50 miles per hour (each was traveling 25 miles per hour). This issue is revolved favorably to the state, however, based on the testimony of the defendant's investigator, who conducted a simulation at the scene roughly three weeks after the actual event. The defendant's representative confirmed that part of Renzullo's testimony that someone in her position in fact would be able to see the rear license plate of a passed vehicle as she described.

When the investigator engaged in this recreation, one of the two rear plate lights on the defendant's vehicle was functional. The investigator testified that the area where Renzullo observed the defendant's vehicle is well lit and that he could not tell whether the plate was illuminated by that ambient lighting or by the plate light on the vehicle itself. The court is unable to give probative weight to this evidence of uncertainty. Renzullo testified that the plate lights were not working; when the investigator made his observations, one of those lights was working. Thus, for the investigator's testimony to have weight here, it would have to be construed to mean that *if* neither plate light was functional, the plate nonetheless would have been illuminated by the ambient lighting, and Renzullo would not have able to discern the difference. This testimony is too speculative to warrant probative value.

Finally, the defendant presented evidence that as of the date of the recreation, one of the plate lights on his vehicle was operating. This is contrary to the way the court construes Renzullo's testimony, which indicated that the rear license plate was not illuminated at all. *See* note 1 *supra*. The court finds that Renzullo was in the best position of any witness to observe the condition of those plate lights at the relevant time. Thus, evidence of the partial operation three weeks after the incident yields to the more probative evidence of the condition of the lights at the time of the incident itself.

It bears note that Renzullo testified that after she had stopped the vehicle, she noticed in the parking lot that the plate light was out; this would confirm the initial observation she made, triggering the investigatory stop. The defendant challenged that evidence in part through the testimony of her supervisor, Sargent Hashey, that in many cases it is difficult to determine if rear plate lights are working when the headlights of a police cruiser are shining on the rear of the subject vehicle. Hashey made this comment, however, in the context of a discussion of the common practice for investigating officers

2

to stop their cruisers so that it is offset toward the driver's side of the subject vehicle. When this happens, the cruiser's passenger side headlight is more likely to shine directly on the center of the rear of the subject vehicle. There is no meaningful evidence of the precise alignment of the two cars during this particular stop, and neither party inquired further of Hashey about whether this was – or was not – one of the majority of situations where, in his view, it would be difficult to assess the condition of the rear plate light.

The defendant makes the legal argument that Renzullo was obligated to create a "nexus" between the reason for the stop (namely, the vehicle defect) and her subsequent contact with the defendant. On this basis, the defendant argues that she should have given him a defect card or at least advised him of the reason for the stop. The authority cited by the defendant, however, does not support this analysis. Rather, the evidence demonstrates that it was reasonable for Renzullo to have contact with the defendant, who was operating a vehicle with defective illumination. *See State v. Gulick*, 2000 ME 170, ¶¶ 15-16, 759 A.2d 1085, 1088-89 (construing line of cases that includes *State v. Taylor*, 1997 ME 81, 694 A.2d 907, on which the defendant relies). When she had that contact with him, she observed evidence of alcohol consumption. The nature and focus of her investigation then changed, and she was entitled to proceed as she did.

The defendant also contests the state's position that Renzullo had probable cause to arrest the defendant. The court has addressed this issue on the record.

The entry shall be;

For the reasons stated on the record and in the foregoing opinion, the defendant's motion to suppress is denied.

Dated: May 3, 2004

_____
Justice, Maine Superior Court

3