2007 ME 91

**STATE of Maine**

v.

**Donna M. JUST.**

Supreme Judicial Court of Maine.

Submitted On Briefs: June 13, 2007.

Decided: July 19, 2007.

Michael E. Povich, District Attorney, Mary N. Kellett, Asst. Dist. Atty., Ellsworth, for State.

Jeffrey C. Toothaker, Toothaker & Chong, Ellsworth, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, SILVER, and MEAD, JJ.

ALEXANDER, J.

[¶ 1] Donna M. Just appeals from a judgment entered in Superior Court (Hancock County, *Hjelm, J.*) finding her guilty of operating under the influence (OUI) (Class D), 29–A M.R.S. § 2411(1–A)(A) (2006) after a jury trial. Just argues that the trial court erred by (1) allowing a police officer to testify that Just's performance of the horizontal gaze nystagmus (HGN) test indicated "impairment," and (2) determining that there was sufficient evidence to prove her guilty of OUI. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] In May 2006, Just was charged with OUI (Class D), 29–A M.R.S. § 2411(1–A)(A). Just entered a plea of not guilty, and a jury trial was held in September 2006.

[¶ 3] At trial, the officer of the Mount Desert Police Department who stopped Just testified to the following. On the evening of May 3, 2006, at approximately 9:15 P.M., he observed Just's car operating with the passenger's side tires completely over the white fog line. The officer next observed the vehicle drift over the yellow center divider line twice. Both times the entire driver's side portion of the car was in the oncoming lane. The officer then saw the vehicle drift over and touch the white fog line for a second time. At this point, he activated his emergency lights, signaling Just to stop.

[¶ 4] When the officer reached Just's driver's side window, he smelled a "strong odor of intoxicating liquor." The officer asked Just for her license, insurance, and registration. She handed him her driver's license. He noticed that her eyes were bloodshot and glossy, and that she had "thick, slurred speech." He asked Just if she had had anything to drink. She stated that she had not. After a brief conversation, the officer asked her again for her insurance and registration. As Just was handing the officer her insurance card, she dropped it. The officer again asked her if she had been drinking, and she stated "no." The officer then asked Just to get out of the car to perform several field sobriety tests.

[¶ 5] The first test the officer requested Just to perform was the HGN test. The officer testified that "[c]ertain reactions to the eye during certain parts of the test show impairment and the amount of impairment." Just objected, and the attorneys had a sidebar conference with the court. Just argued that pursuant to our opinion in *State v. Taylor*, 1997 ME 81, 694 A.2d 907, the officer should not be allowed to testify that an HGN test shows impairment.

[¶ 6] The court overruled the objection, stating that: "HGN is properly used in court as something more than evidence simply of the presence of alcohol in the system, and it is admissible evidence of intoxication itself."

[¶ 7] Thereafter, the officer testified that HGN testing indicates "[i]mpairment of alcohol or certain types of drugs." The officer testified that if a nystagmus, or involuntary jerking of the eye, is seen, this indicates "impairment." The officer observed six instances of involuntary jerking of the eye at various stages of Just's testing, which, he stated, "led me to believe that—just to build more towards ... intoxication for Ms. Just."

[¶ 8] During cross-examination, the officer stated that he had not been taught that there were other causes for nystagmus or what percentage of the population naturally has nystagmus. He was aware that there are approximately forty types of nystagmus. The officer stated that police officers look for horizontal gaze nystagmus because that is the type that "tells you alcohol impairment."

[¶ 9] The officer testified that he had Just perform three other field sobriety tests, and that she performed poorly on two of the three. At the end of these tests, the officer asked Just if she had been drinking, and she stated that she had been at a wine tasting in Bar Harbor, that she had been "sipping off two or three wines," and that her last drink was about an hour ago.

[¶ 10] Based on the officer's observations, the field sobriety tests, and the totality of the circumstances, the officer determined that Just was impaired and unable to operate a motor vehicle safely. The officer arrested Just and took her to the Bar Harbor Police Department, where there is an intoxilyzer machine. Just did not perform the intoxilyzer test properly and was deemed to have refused to take that test.

[¶ 11] After the close of the evidence, the court, in instructing the jury, discussed the HGN test in some detail, commenting twice that the HGN test was subject to "judicial notice," and stating that "the State Supreme Judicial Court speaking for the court system as a whole, has recognized that the results of an HGN test can be used as evidence, that it can be used as circumstantial evidence of intoxication." At Just's request, the court then advised the jury that there are thirty-eight other causes of nystagmus and listed all thirty-eight for the jury. The jury found Just guilty. She was sentenced to four days in jail, ordered to pay a $600 fine, and her license was suspended for ninety days.

[¶ 12] Just filed this timely appeal.

## II. LEGAL ANALYSIS

[¶ 13] Just argues that pursuant to *Taylor*, 1997 ME 81, ¶ 14, 694 A.2d at 912, the officer's testimony that the HGN test showed impairment was inadmissible because it allowed him to implicitly tell the jury that Just was under the influence. We have taken judicial notice of the HGN test's "reliability in making determinations of probable cause for arrest and for purposes of establishing criminal guilt in cases involving operating under the influence." *Taylor*, 1997 ME 81, ¶ 10, 694 A.2d at 910.

[¶ 14] Based on the background of the HGN test discussed in *Taylor*, we held that testimony about HGN test results is admissible "if a proper foundation is laid for [its] introduction in evidence." *Id.* ¶ 12, 694 A.2d at 911–12. However, this holding, and its reference to judicial notice, related to the propriety of a court's decision to admit HGN test results if a "proper foundation" for use of the test is established. *Id.* Our holding in *Taylor* did not suggest that the HGN test should be subject to any special comment by the court to the jury that could imply either that an HGN test was properly administered, or that the HGN test should be given any greater weight than other evidence suggesting the presence or absence of intoxication on the particular facts of the case.

[¶ 15] Comment by the court on the evidence during instructions is "neither required nor appropriate in most instances." *State v. Kim*, 2001 ME 99, ¶ 8, 773 A.2d 1051, 1054; *see State v. Edwards*, 458 A.2d 422, 424–25 (Me.1983). The court's instruction on the HGN test, referencing judicial notice in discussing the HGN test and listing thirty-eight other causes of nys-

tagmus, was consented to by the defense. The fact that nystagmus has thirty-eight separate causes was addressed by the defense in closing. Accordingly, the HGN instructions, in the context of this case, were not obvious error, *see State v. White*, 2002 ME 122, ¶ 8, 804 A.2d 1146, 1149, but such instructions giving special focus to particular evidence should be avoided.

[¶ 16] In *Taylor*, we held that "the results of an HGN test are admissible only as ... circumstantial evidence of intoxication. The HGN test may not be used by an officer to quantify a particular blood alcohol level in an individual case." 1997 ME 81, ¶ 13, 694 A.2d at 912 (emphasis omitted). Because the officer's testimony in *Taylor* related to the particulars of the defendant's blood-alcohol level, we held that admission of testimony attempting to tie HGN test observations to a particular blood-alcohol level was in error. *Id.* ¶ 14, 694 A.2d at 912.[1] We then determined that the error was harmless. *Id.* ¶ 15, 694 A.2d at 912–13.

[¶ 17] In the case before us, the police officer did not testify about the particulars of Just's blood-alcohol level or state that the HGN test led him to believe that Just had a particular blood-alcohol level. In *Taylor* we recognized the reliability of the HGN test as circumstantial evidence of intoxication. The officer's testimony regarding "impairment" was within this permissible scope of evidence. Therefore, the trial court did not err in allowing the officer to testify that Just's performance of the HGN test showed evidence of impairment or intoxication.

[¶ 18] Furthermore, the evidence discussed above was sufficient to support the verdict.

The entry is:

Judgment affirmed.

---

1. Specifically, the officer in *State v. Taylor* had testified that (1) four or more HGN test clues correlated with a 77% probability that a subject will test in excess of 0.10% blood-alcohol by weight, and (2) in his experience conducting hundreds of tests, only once or twice had someone indicated six clues but had a blood-alcohol content of less than 0.10%. 1997 ME 81, ¶ 7, 694 A.2d 907, 909.