STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-16-1712

STATE OF MAINE

v.

ORDER ON MOTION
TO SUPPRESS

JOSHUA HOLLAND,

Defendant

The defendant seeks to suppress evidence obtained as a result of the stop and the arrest of defendant on 3/22/16. The defendant argues that the officer lacked reasonable and articulable facts to justify the stop and lacked probable cause for the arrest. For the following reasons, the motion is denied.

FINDINGS OF FACT

Officer Benjamin Burns has been employed by the Cumberland Police Department since November 2015. Previously, he worked for the Maine Marine Patrol for six months. He graduated from the Maine Criminal Justice Academy in May 2015. He received OUI training, including training in standard field sobriety tests and the intoxilyzer and participating in the wet lab exercise. He took a refresher course in field sobriety tests at the end of 2015. At the time of the stop in question, he was deemed proficient in field sobriety tests but not in horizontal gaze nystagmus (HGN). He has made approximately ten OUI stops during his career.

On 3/22/16, Officer Burns was in uniform and in a marked cruiser and was working the 4:00 p.m. to 2:00 a.m. shift. The weather was clear and cool. At a little after 10:00 p.m., he was using a dash camera and was facing oncoming traffic on Route 100. (Def.'s Ex. 1.) He was running radar on some passing vehicles but not all of them. As he was monitoring traffic, he observed a 2007 Subaru. He did not recall if the car was

1

speeding. He ran the registration, which was valid and which showed the car had a single registered owner, Elizabeth Holland. The owner had an expired driver's license. As the car passed, Officer Burns was not able to observe the operator or to determine whether the operator was a male or female. His testimony is confirmed by the video. (Def.'s Ex. 1.) It was dark and he was focused on reading the registration plate and entering that information into his computer. Officer Burns activated his lights. The vehicle pulled over appropriately on the shoulder, as shown on the video. (Def.'s Ex. 1.)

Officer Burns approached the driver's side of the car and observed a male operator put down halfway the rear window on the driver's side before the driver's side window went down, which is not a NHTSA clue of impairment. Officer Burns testified he smelled a strong odor of intoxicating beverage coming from the car; in his report he wrote he smelled an odor of intoxicating beverage. Officer Burns asked for a license, registration, and insurance. The operator provided the requested documents with no difficulty.

Officer Burns identified the operator as defendant, Joshua Holland. Officer Burns asked how many drinks defendant had had. He responded he had two vodka drinks with a shot of vodka in each earlier that evening. Officer Burns did not ask specifically when defendant drank the drinks. Officer Burns did not notice slurred speech or red, bloodshot eyes and none of defendant's faculties appeared to be impaired. Based on the admission to drinking and the odor of intoxicating beverage, Officer Burns determined to administer field sobriety tests. He called for a back-up officer for officer safety reasons.

Officer Burns turned off his front and side facing lights and angled the spot light for the field sobriety tests. He requested that defendant get out of the car and walk to the back of the car, where the road was clear and had no ice. Defendant's demeanor

2

was fine and he did not sway or stumble as he walked, as confirmed by the video. (Def.'s Ex. 1.)

Officer Burns inquired regarding previous injuries. Defendant had no back or leg problems and his work involved lifting heavy objects all day. He said he was generally pretty healthy. He was not wearing contact lenses and was wearing comfortable shoes.

Although Officer Burns has not been deemed proficient in administering the HGN test because he had not performed ten tests outside of the Academy, he performed the HGN test. Officer Burns did not ask whether defendant had natural nystagmus but did not notice that. He explained the test and properly administered the test. Defendant understood and followed the instructions. Officer Burns noted a strong odor of intoxicating beverage while standing within a couple of feet from defendant. Officer Burns noted two clues for each section, one for each eye. The video shows that defendant had no difficulty standing with his arms to his sides while the HGN test was administered.[1] (Def.'s Ex. 1.)

Officer Burns next demonstrated and explained the walk and turn test. Defendant stated he understood. Defendant stood appropriately with his arms at his sides during the instructions. Officer Burns stated he observed eight clues, including stepping off the line, walking an incorrect number of steps, performing an improper turn, and missing heel to toe. The video does not confirm defendant stepped off the line. Officer Burns did not note which steps were performed improperly. Defendant's

---

[1] Officer Burns stood directly in front of defendant during the HGN test, during the instructions for the walk and turn and one-leg stand tests, and during part of defendant's performance of the one-leg stand test, which made viewing defendant difficult. (Def.'s Ex. 1.)

missing heel to toe cannot be seen on the video. Officer Burns demonstrated, essentially, a three-point turn and defendant performed a two-point turn.

Officer Burns next demonstrated and explained the one-leg stand test. Defendant stood appropriately during the instructions with his hands at his sides. Defendant stated he understood. During the test, he put his right foot down a number of times. The officer testified that defendant had the same difficulties when he changed to his left foot. The video confirms that defendant was performing the test as instructed using his left foot but the officer appears to have told defendant to stop. The video does not confirm the officer's testimony that defendant swayed and used his arms for balance. There is no audio to determine whether, as the officer testified without detail, defendant repeated numbers or had difficulty counting.

Although the video shows the officer making notes throughout his encounter with defendant, the officer never keeps his notes because he does not see why they are needed. He did not in his report however, detail the mistakes he testified that defendant made during the tests and at trial could not recall specifics regarding the defendant.

After the one-leg stand test, Officer Burns determined he had probable cause to place defendant under arrest for OUI. Officer Burns transported defendant for an intoxilyzer test.

CONCLUSIONS OF LAW

Stop

In order to justify a brief investigatory stop, "a police officer must have an articulable suspicion that criminal conduct or a civil violation has occurred, is occurring, or is about to occur, and the officer's suspicion must be 'objectively reasonable in the totality of the circumstances.'" State v. Brown, 1997 ME 90, ¶ 5, 694 A.2d 453 (quoting

4

State v. Cusack, 649 A.2d 16, 18 (Me. 1994)). "An investigatory stop is valid when it is 'supported by specific and articulable facts which, taken as a whole and together with the rational inferences from those facts, reasonably warrant the police intrusion.'" See State v. Taylor, 1997 ME 81, ¶ 9, 694 A.2d 907 (quoting State v. Hill, 606 A.2d 793, 795 (Me. 1992)). "'The reasonable suspicion standard requires less than probable cause that a crime was being committed, but more than speculation or an unsubstantiated hunch.'" State v. Sampson, 669 A.2d 1326, 1328 (Me. 1996) (quoting State v. Caron, 534 A.2d 978, 979 (Me. 1987)). "The facts supporting an investigatory search need not be based on the officer's personal observations, but can be provided by an informant if the information carries sufficient 'indicia of reliability.'" State v. Cushing, 602 A.2d 1169, 1170 (Me. 1992); see also State v. Burgess, 2001 ME 117, ¶ 9, 776 A.2d 1223.

At the time Officer Burns pulled defendant over, he had articulable suspicion that the car's registered owner, Elizabeth Holland, was driving with an expired driver's license. See State v. Tozier, 2006 ME 105, ¶ 9, 905 A.2d 836 ("[I]t is reasonable to suspect that the driver of a vehicle is its registered owner, absent indications to the contrary."). The fact that defendant was of a different gender than Ms. Holland does not render the stop invalid because Officer Burns did not learn this until after he had pulled defendant over. See State v. Hill, 606 A.2d 793, 795 (Me. 1992).

Officer Burns's decision to continue the investigation after learning that defendant was not Ms. Holland was permissible if it was "reasonably related in scope to the circumstances which justified the interference in the first place." Id. (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)). "This reasonableness determination involves a 'weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.'" Id. (quoting Brown v. Texas, 443 U.S. 47, 51 (1979)). Once Officer

5

Burns smelled an odor of intoxicating beverage coming from the car, and defendant admitted to drinking, the gravity of protecting the public from impaired drivers justified the relatively minimal intrusion of asking defendant for his license, registration and insurance and performing the field sobriety tests. See id.; State v. Gulick, 2000 ME 170, ¶¶ 15, 19-21, 759 A.2d 1085; State v. Huether, 2000 ME 59, ¶ 8, 748 A.2d 993.

Arrest

In order to justify an arrest, an officer must have probable cause to believe the defendant's senses were "affected to the slightest degree, or to any extent," by the alcohol consumed. See State v. Webster, 2000 ME 115, ¶ 7, 754 A.2d 976.

The court does not consider defendant's performance on the HGN test in this analysis. HGN results are admissible only if a proper foundation has been laid. State v. Taylor, 1997 ME 81, ¶ 12, 694 A.2d 907. A proper foundation consists of "evidence that the officer or administrator of the HGN test is trained in the procedure and the test was properly administered." Id. In Taylor, the officer was sufficiently trained because he had taken a three-day course and had "tested numerous subjects both in the field and in controlled situations." Id. ¶ 12 n.9. Similarly, in State v. Moulton, the officer testified that he was "properly certified in drug recognition pursuant to statute." 1997 ME 228, ¶¶ 4, 18, 704 A.2d 361. In contrast, here, Officer Burns had made approximately ten OUI stops in his career, and he was not proficient in administering the HGN test because he had not performed ten tests outside of the Academy.

Even without considering defendant's performance on the HGN test, probable cause existed to justify the arrest. Officer Burns noticed an odor of intoxicating beverage coming from the car, and while he was standing within a couple of feet from defendant. Defendant admitted that he had had two vodka drinks earlier that evening. Based on the smell of an intoxicating beverage, a reasonable conclusion is that the consumption

6

of alcohol was close in time to the stop and included more than two drinks. Although the video does not confirm all of Officer Burns's testimony, it does confirm that defendant performed an improper turn and walked an incorrect number of steps during the walk and turn test. Defendant put his right foot down a number of times during the one-leg stand test. This evidence was sufficient to establish probable cause. See Webster, 2000 ME 115, ¶¶ 7-9, 754 A.2d 976 (probable cause standard for arrest for OUI "has a very low threshold.").

The entry is

Defendant's Motion to Suppress is DENIED.

Date: October 21, 2016

Nancy Mills
Justice, Superior Court