MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 76
Docket:        Cum-16-150
Submitted
 On Briefs:    January 19, 2017
Decided:       May 2, 2017
Corrected:     July 27, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

JACOB A. HINKEL

JABAR, J.

[¶1]  Jacob A. Hinkel appeals from a judgment entered by the trial court (Cumberland County, *Wheeler, J.*) after a jury found him guilty of one count of operating under the influence (OUI) with a refusal to submit to a chemical test (Class D), 29-A M.R.S. § 2411(1-A)(C)(2) (2016), and the trial court found him guilty of one count of operating after suspension (Class E), 29-A M.R.S. § 2412-A(1-A)(D) (2016).  We affirm the judgment.

## I.  BACKGROUND

[¶2]  When the evidence is viewed in the light most favorable to the State, the jury could have found the following facts beyond a reasonable doubt.  *See State v. Brockelbank*, 2011 ME 118, ¶ 2, 33 A.3d 925.  In the early

morning of September 2, 2015, a South Portland police officer was working an OUI detail when he observed a car with its headlights off traveling at a speed in excess of the lawful limit. After the vehicle passed his cruiser, the officer activated his emergency lights and pulled the vehicle over into the breakdown lane. When the officer approached the driver's side window of vehicle, he encountered Hinkel in the driver's seat. Hinkel had red and glossy eyes and spoke in a slow and deliberate manner. The officer noted the smell of intoxicants emanating from the vehicle and asked Hinkel if he had been drinking. Hinkel denied drinking and explained that the smell was likely coming from the passenger. Suspecting that Hinkel was impaired, the officer asked him to exit the vehicle to perform a horizontal gaze nystagmus[1] (HGN) test. Hinkel complied. When Hinkel exited the vehicle, the officer continued to smell the odor of intoxicants on his breath. The officer again asked Hinkel if he had been drinking, and Hinkel again denied drinking but explained that he suffered from scoliosis and was taking aspirin for his back pain.

[¶3] The officer proceeded to perform the HGN test on Hinkel and observed all of the six possible clues of impairment. He also had Hinkel complete verbal alphabet and counting tests. Based on Hinkel's performance

---

[1] Nystagmus is the involuntary jerking of the eyeball, which "may be aggravated by central nervous system depressants such as alcohol or barbiturates." *State v. Taylor*, 1997 ME 81, ¶ 11, 694 A.2d 907 (quotation marks omitted).

3

on these field sobriety tests and the totality of circumstances he observed, the officer placed Hinkel under arrest for OUI. A second South Portland police officer, who was also on duty that morning, arrived shortly thereafter and also performed an HGN test on Hinkel. The second officer similarly observed all six clues of impairment.

[¶4] The second officer traveled with Hinkel to the county jail. There, the second officer tried to administer an Intoxilyzer test but he was unable to obtain a valid breath sample after four attempts because Hinkel gave deficient samples each time. After the unsuccessful attempts to obtain a breath sample, the second officer asked Hinkel to consent to a blood alcohol test and presented him with an implied consent form. In response, Hinkel began asking questions about what would be done with the sample. The second officer answered the questions to the extent he was able, but Hinkel persisted with his inquiries, never answering whether he would sign the form. After requesting more than ten times that Hinkel answer whether he would sign the implied consent form, the second officer deemed Hinkel's behavior to constitute a refusal to submit to a chemical test.[2]

---

[2] Hinkel has not challenged, on constitutional grounds, the admissibility of evidence of his refusal to submit to a blood draw. *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2185, 195 L. Ed. 2d 560 (2016).

[¶5]  Hinkel was later charged by complaint with OUI while refusing to submit to a chemical test (Class D), 29-A M.R.S. § 2411(1-A)(C)(2), and operating after suspension (OAS) (Class E), 29-A M.R.S. § 2412-A(1-A)(D).  He pleaded not guilty to both charges.  Prior to trial, the parties stipulated that, "for strategic reasons," the jury would hear and decide the OUI charge only, and that the court would decide the OAS charge while the jury deliberated.  During the OUI portion of the trial, both officers, over Hinkel's objections, testified to Hinkel's performance on the HGN tests.  The jury found Hinkel guilty of OUI with a refusal to submit to a chemical test, and the court, based on evidence presented while the jury deliberated, found him guilty of OAS.  The court sentenced Hinkel to 120 days' imprisonment, all but twelve days suspended, and one year of probation.  Hinkel appeals.

## II.  DISCUSSION

A.  Admission of HGN Testimony

[¶6]  Hinkel argues that the court erred in concluding that the State laid a proper foundation for the admission of testimony regarding the HGN tests.  Specifically, he argues that the State did not establish that the second officer was qualified to administer the HGN test or that the tests conformed to the

procedures set forth by the National Highway Traffic Safety Administration (NHTSA).

[¶7] We review evidentiary rulings for clear error and an abuse of discretion. *State v. Taylor*, 1997 ME 81, ¶ 10, 694 A.2d 907. In *Taylor*, we took judicial notice of the reliability of HGN tests "for purposes of establishing criminal guilt in cases involving operating under the influence" and held that testimony regarding the tests may be admitted "as evidence supporting probable cause to arrest without a warrant or as *circumstantial* evidence of intoxication." *Id.* ¶¶ 10, 13. To be admissible, however, the proponent of the testimony must lay a proper foundation by establishing that "the officer or administrator of the HGN test is trained in the procedure and the test was properly administered." *Id.* ¶ 12.

[¶8] Here, the State laid a proper foundation pursuant to *Taylor*. Both officers testified that they graduated from the Maine Criminal Justice Academy, where they received training on the administration of field sobriety tests, including the HGN test. In fulfilling its gatekeeping function, *see State v. Atkins*, 2015 ME 162, ¶ 2, 129 A.3d 952, the trial court properly determined that, based on the officers' training and experience, each was qualified to testify.

[¶9]    In addition to arguing that the second officer lacked sufficient training and experience to testify about Hinkel's performance on the HGN test, Hinkel also contends that the HGN tests here were administered improperly. Hinkel, however, does not point to any evidence in the record demonstrating how the tests deviated from the standards set forth in the NHTSA manual.  To the extent that the officers did deviate from the protocol provided in the NHTSA manual, the court did not err in admitting the testimony.  We have established that "[a] police officer's failure to strictly adhere to the specific procedures promulgated by NHTSA does not render evidence regarding those field sobriety tests inadmissible or without value in determining whether a suspect is under the influence of intoxicants." *State v. Fay*, 2015 ME 160, ¶ 7, 130 A.3d 364.  Under this framework, once the court determined that the officers' administration of the HGN tests was sufficiently reliable, Hinkel was free to explore through cross-examination any alleged failures by the officers to strictly adhere to NHTSA protocol.  Therefore, the court neither erred nor abused its discretion in permitting the officers to testify about their administration of the HGN tests on Hinkel.

B.    Consideration by the Court of Evidence of Operation

[¶10]  Hinkel next contends that the court committed obvious error by considering testimony from the OUI portion of the trial—as presented to the jury—to conclude that the State met its burden of proving the operation element of the OAS charge, which was decided by the court rather than the jury.

[¶11]  Because Hinkel did not make a timely objection at trial, we will vacate only after concluding that there is "(1) an error, (2) that is plain, and (3) that affects substantial rights." *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147*.*  "If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.*

[¶12]  We discern no such error here.  The court did not formally sever the OAS and OUI charges pursuant to M.R.U. Crim. P. 8(d), which provides that a court may grant a severance of charges "if it appears that a defendant . . . is prejudiced by a joinder of offenses."  Rather, the parties agreed before trial to have the court decide the OAS charge for "strategic reasons."  Because the court did not make any determination that prejudice would result from hearing the charges simultaneously, the court did not commit obvious error

when it considered testimony presented to the jury on the OUI charge in deciding the OAS charge. *See* M.R.U. Crim. P. 8(d); *State v. Lemay*, 2012 ME 86, ¶ 23, 46 A.3d 1113.

C.      Sufficiency of the Evidence

[¶13]  Lastly, Hinkel contends that there was insufficient evidence in the record upon which the jury rationally could find him guilty of OUI with a refusal to submit to a chemical test.  Viewing the evidence presented in the light most favorable to the State, however, there was sufficient evidence presented to allow the jury to rationally find every element of the crime charged beyond a reasonable doubt.  *See* 29-A M.R.S. § 2411(1-A)(C)(2); *State v. Cheney*, 2012 ME 119, ¶ 37, 55 A.3d 473; *State v. Just*, 2007 ME 91, ¶¶ 4, 7, 18, 926 A.2d 1173.

The entry is:

Judgment affirmed.

---

Tina Heather Nadeau, Esq., The Law Office of Tina Heather Nadeau, PLLC, Portland, for appellant Jacob Hinkel

Stephanie Anderson, District Attorney, and William J. Barry, Asst. Dist. Atty., Prosecutorial District Two, Portland, for appellee State of Maine