2002 ME 66

**STATE of Maine**

v.

**David McCURDY.**

Supreme Judicial Court of Maine.

Submitted on briefs: Dec. 20, 2001.

Decided: April 18, 2002.

---

Michael E. Povich, District Attorney, Carletta M. Bassano, Deputy Dist. Atty., Machias, for State.

Thomas J. Connolly, Esq., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] David McCurdy appeals from a judgment of conviction for operating under the influence (OUI), 29–A M.R.S.A. § 2411, entered in the Superior Court (Washington County, *Hjelm, J.*) following a jury trial. McCurdy argues that (1) there was insufficient evidence to convict him of the offense charged, (2) the court improperly allowed a witness called by the State to testify about her qualifications for determining intoxication and did not impose a sufficient sanction for an alleged discovery violation by the State, and (3) the court improperly excluded evidence of bias on the part of the arresting officer. We affirm the conviction.

[¶ 2] On November 6, 1999, McCurdy and Michael Tinker attempted to enter the country through the Lubec port of entry on their way home from a trip to Canada. They were questioned at the customs station by U.S. Customs Inspector James Doherty, and when they admitted to him that they had been drinking, Inspector Doherty asked them to pull into the Customs Office parking lot and to come into the station. Inspector Amy Jackson observed (but did not overhear) the interchange from her nearby office. Jackson went into the front of the station when she saw the men park and come inside.

[¶ 3] About this time, Officer John Fuller, a deputy in the Washington County Sheriff's Department, arrived at the entry port as part of his regular patrol. Although Fuller did not observe McCurdy driving or exiting the car, he did see McCurdy walk across the parking lot to the office.

[¶ 4] Tinker told Officer Fuller that he had been driving, and Fuller did not then ask either of the customs officers to confirm this. Because Tinker was acting intoxicated, Fuller arrested him for OUI. He also arrested McCurdy for drinking in violation of the conditions of his probation.[1] The next day Fuller went to get statements from the customs inspectors, and learned that McCurdy had been driving the car.[2] McCurdy was then charged with OUI.

[¶ 5] Prior to trial, the defense made a discovery request for all information establishing the qualifications of any witness that the State planned to have offer any expert opinions. The State did not provide anything to the defendant in discovery about the qualifications of Inspector Jackson or Officer Fuller.[3]

---

1. The Superior Court found that this arrest was improper, and suppressed the intoxilyzer test later administered at the station. We do not address the correctness of that ruling.

2. Inspector Doherty stated in the police report, and later testified at the trial, that McCurdy had been driving. McCurdy does not challenge this testimony.

3. The parties refer to a discovery order but the record does not indicate that the discovery request was granted. M.R.Crim. P. 16(d)(3) requires the State to submit proposed expert testimony in writing prior to trial upon the request of the defendant. The State's failure to submit the names of Inspector Jackson and Officer Fuller as potential expert witnesses, however, does not appear to be a violation of the discovery order because opinion testimony as to a person's intoxication is generally not considered to be expert testimony. *State v. Libby,* 153 Me. 1, 133 A.2d 877

[¶ 6] Jackson testified at trial about the symptoms McCurdy exhibited, McCurdy objected to Jackson testifying about her qualifications as an expert because the State had not provided anything in discovery about her qualifications to determine intoxication. The State responded that, although it wanted to have Jackson testify about her qualifications to recognize intoxication, it did not intend to have her offer a *conclusion* about whether McCurdy was intoxicated. The court overruled the objection on these grounds, and Jackson testified to a variety of symptoms that she observed, and that she had received training to detect intoxication. Jackson, however, did not actually give an opinion about whether McCurdy was intoxicated at the time of his arrest. The State did elicit from Jackson that, based on the symptoms she observed, she would not have let McCurdy leave the office without having a police officer come to examine him.

[¶ 7] McCurdy also objected to the testimony of Fuller that he had received training to detect intoxication on the grounds that Fuller's qualifications had not been provided in discovery prior to trial. McCurdy urged the court to prohibit Fuller from testifying about his training or offering an opinion about whether McCurdy was intoxicated. The court overruled the objection. Fuller then testified about his training to detect intoxication and offered his opinion that McCurdy was intoxicated.

[¶ 8] McCurdy presented evidence that he had suffered severe neurological injuries in an accident about twenty-five years earlier, and as a result he has difficulty maintaining his balance, cannot walk straight, his eyes are bloodshot, and he has difficulty speaking.

[¶ 9] McCurdy called Paul Kenney and attempted to question Kenney about Officer Fuller and his relationship with and attitude toward McCurdy. After establishing that Fuller was well-known in the community, and that the witness had a basis to know Fuller's reputation, McCurdy asked "[i]n terms of Mr. Fuller's relationship with David McCurdy, are you aware of whether, in the community, there is a reputation that Mr. Fuller has in dealing with Mr. McCurdy?" [4] The State objected, and the court called the attorneys to sidebar. At sidebar, McCurdy's counsel told the court that he intended to have Kenney testify that he is "aware of a reputation in the community that [Fuller] has hostility and bias toward" McCurdy. The court informed McCurdy's attorney that the evidence of bias, although admissible if presented in the proper form, could not be presented in the form of reputation evidence. The court made clear that the witness could testify to specific incidents of which he had personal knowledge that would suggest bias on the part of Fuller. Thus, the court sustained the State's objection to questions about Fuller's "reputation for bias" against McCurdy. There was no attempt on the part of McCurdy to introduce evidence of specific events tending to show bias on the part of Fuller. The jury found McCurdy guilty of OUI. McCurdy filed this appeal.

(Me.1957); *State v. Hamilton,* 149 Me. 218, 100 A.2d 234 (Me.1953); *Stacy v. Portland Publ'g Co.,* 68 Me. 279 (Me.1878).

4. Fuller and McCurdy have known each other for a long period of time, and their relationship has not been cordial. Fuller has arrested McCurdy at least eight times over the past twenty years. He has also arrested McCurdy's son at least six times. McCurdy suggested that Fuller's hostility toward McCurdy results from the fact that they both had been married to the same woman at different times.

## I.

[¶ 10] McCurdy first contends that there was insufficient evidence to convict him of OUI. When reviewing the sufficiency of the evidence, we view the evidence in "the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *State v. Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027. We will overturn a verdict for insufficient evidence "only when no trier of fact rationally could have found the essential elements of the charged offense beyond a reasonable doubt." *State v. Tai*, 629 A.2d 594, 595 (Me.1993). The weight of the evidence and the determinations of witness credibility are the exclusive provinces of the factfinder. *State v. Harper*, 675 A.2d 495, 497 (Me.1996). In an OUI prosecution, the State does not need precise evidence of a person's blood alcohol content (such as would be provided by the results of an intoxilyzer test) in order to prove that the person was under the influence of an intoxicant: testimony that the defendant exhibited symptoms of intoxication can be sufficient to support a finding that the defendant was under the influence. *See State v. Griffin*, 642 A.2d 1332 (Me.1994); *State v. Mendros*, 622 A.2d 1178 (Me. 1993); *see also State v. Worster*, 611 A.2d 979, 981 (Me.1992) (testimony of game warden that he saw defendant smoking a marijuana cigarette and that the defendant had "glassy and baggy eyes" sufficient to support finding that defendant was under influence of marijuana while hunting).

[¶ 11] The State presented testimony that McCurdy and Tinker smelled like alcohol, that McCurdy's face was flushed and his eyes were bloodshot, and that McCurdy admitted he had been drinking, as well as Fuller's opinion that McCurdy was intoxicated. McCurdy contends that the evidence was insufficient because a critical piece of the evidence—the opinion testimony of Officer Fuller—was not based on a sufficient factual foundation. We disagree. Fuller observed McCurdy sufficiently to offer an opinion as to his state of intoxication. Moreover, there is much other evidence on which the jury could rely to support the conviction.[5] Intoxication can be proven by evidence that a person consumed some quantity of an intoxicating substance and then exhibited signs of intoxication, even if there is no opinion testimony from an expert who observed the defendant at the time of the alleged intoxication. Here the jury heard testimony from both Officer Fuller and Inspector Jackson that McCurdy was exhibiting symptoms that are commonly understood to be signs of intoxication, and McCurdy also admitted to Inspector Doherty that he had consumed alcohol at some point before he reached the border station. This evidence is sufficient to support the jury's determination that McCurdy was under the influence of intoxicating liquor at the time he operated a motor vehicle.

## II.

[¶ 12] McCurdy also contends that the court abused its discretion by allowing the testimony of Inspector Jackson and Officer Fuller because the State did not provide to the defense, as part of discovery, their expert qualifications. We disagree. Even if the failure to disclose their qualifications had been a violation of the discovery order, the trial court had broad

---

5. McCurdy is not challenging Officer Fuller's qualifications as an expert. McCurdy did not object at trial to the admission of Fuller's opinion testimony on the basis of Fuller's qualifications and consequently did not preserve the issue.

discretion to decide on an appropriate sanction. *St. Paul Ins. Co. v. Hayes*, 2001 ME 71, ¶ 7, 770 A.2d 611, 613. McCurdy has not shown that the court acted outside the bounds of its discretion by not disallowing the testimony as a sanction. He has not shown actual prejudice. Moreover, opinion testimony concerning a person's state of sobriety is not testimony that can be given only by expert witnesses, and is routinely presented in OUI prosecutions.

## III.

[¶ 13] Finally, McCurdy contends that the court's refusal to allow him, through his witness Paul Kenney, to present evidence that Fuller had a "reputation for bias" against McCurdy was an abuse of the court's discretion. Evidence of bias is broadly admissible under the Maine Rules of Evidence. *See* FIELD & MURRAY, MAINE EVIDENCE § 607.2, 254 (1997) ("Bias is of great value in assessing credibility and courts are very liberal in admitting evidence showing relationships or circumstances tending to impair a witness's credibility."). Evidence of a witness's bias is usually admitted under Rule 607.[6] *Id.* at 254–57. Pursuant to Rule 607, the defendant is free to present any facts that could reasonably show that a State witness has an ulterior motive for testifying against the defendant. *State v. Whitman*, 429 A.2d 203, 205 (Me.1981); *State v. Doughty*, 399 A.2d 1319, 1323 (Me.1979). Despite the general rule favoring the admission of relevant evidence of bias, such evidence *may* be excluded if it is not presented in the proper form, or pursuant to Rule 403 if its probative value would be outweighed by its prejudicial effect, or if presenting it would constitute a waste of time. *State v. Powers*, 609 A.2d 1167, 1169 (Me.1992).

[¶ 14] The court disallowed Kenney's testimony about the alleged bias of Officer Fuller because it was presented in the form of testimony about Fuller's reputation; there was no offer of proof that Kenney had first-hand knowledge of such bias.[7] Reputation evidence (which otherwise would be inadmissible hearsay) must be admitted pursuant to Rule 608. That rule, however, limits reputation evidence to a witness's reputation for truthfulness or untruthfulness.

[¶ 15] McCurdy cites no cases in which a witness was allowed to testify that another witness has a "reputation for animosity" toward the defendant.[8] Further, nothing in the language of Rule 608 suggests that it was meant to allow evidence of a "reputation of bias" against a defendant.[9] Thus, there was no error in the

---

**6.** Rule 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him."

**7.** McCurdy's contention that he was prevented from presenting any evidence of bias is not accurate. The court said at sidebar that evidence of bias could be admitted, but that it was improper for McCurdy to admit it in the form of reputation testimony by Kenney. Specifically, the Court told McCurdy's counsel that it did not "think bias would be developed through character reference." The court left the door open for McCurdy to present evidence of bias in an appropriate form.

The court did not discuss Rule 403 or a balancing test.

**8.** In the cases cited by McCurdy, witnesses were allowed to testify to facts of which they had personal knowledge when those facts tended to show bias of a State witness toward the defendant.

**9.** The confrontation clause of the Fifth Amendment (as applied to the states through the Fourteenth) also limits a court's ability to exclude evidence of bias on the part of a prosecution witness. A criminal defendant has a constitutional right to present evidence that a State witness is biased, and improperly

court's ruling that Kenney could not testify that Fuller had a reputation in the community for being biased against McCurdy.

The entry is:

Judgment affirmed.

preventing the defendant from presenting evidence tending to show bias on the part of a State witness is a "constitutional error of the first magnitude and no amount of showing of want of prejudice [will] cure it." *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (quoting *Smith v. Illinois*, 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968)).

*Davis*, however, does not eviscerate all evidentiary rules governing how evidence of bias gets to be admitted. The particular testimony in this case was excluded because it was not presented in a proper form. There is nothing in *Davis* that would suggest that a defendant may introduce evidence of bias in a form that would be otherwise unacceptable. If there were no evidentiary restrictions on the form of bias evidence, then defendants would be able to present blatant hearsay evidence as long as it related to the bias of a State witness. *Davis* does not suggest such a result.