2003 ME 34

**STATE of Maine**

v.

**Sharon L. MATSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 13, 2002.

Decided: March 18, 2003.

Geoffrey A. Rushlau, Dist. Atty., Donald L. Lawson–Stopps, Asst. Dist. Atty., Rockland, for State.

Lawrence Frier, Rockland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Sharon Matson appeals from a judgment of conviction of obstructing government administration (Class D), 17–A M.R.S.A. § 751 (Supp.2002), and violating a condition of release (Class E), 15 M.R.S.A. § 1092 (2003), entered after trial

in District Court (Rockland, *Anderson, J.*). On appeal, Matson argues that there was insufficient evidence that her rude and disruptive conduct toward a police officer who was in the process of arresting her companion constituted "intimidation" within the meaning of section 751. We agree and vacate the judgment.

[¶ 2] At approximately 2 A.M. on December 7, 2001, Rockland Police Officer Finnegan stopped a car for having a license plate light out, illegal attachment of plates, and suspicion of operating under the influence (OUI). Finnegan testified that he smelled alcohol on the breath of the driver, Gifford Campbell, and Finnegan asked Gifford to step out and walk to the front of Finnegan's cruiser for field sobriety tests. Campbell's passenger, Sharon Matson, came out of the car yelling, "No, no fucking way. You're not doing to him what you did to me," a reference to the fact that Finnegan had arrested her for OUI a few months before. Finnegan told Matson to sit in the car, to calm down, and not to interfere, but she refused and kept shouting. Finnegan performed a horizontal gaze nystagmus test on Campbell but did no additional field sobriety tests because Matson continued yelling at him and no back-up officers were available. As Finnegan told Campbell he was under arrest for operating after suspension, Matson "charged forward," saying, "No, no fucking way. You're not arresting him." Matson stepped to within a couple of feet of Finnegan; as he began walking Campbell to the cruiser, she stepped in his way and refused to move, shouting all the while. Finnegan warned her she could be arrested for obstructing government administration and told her to step back, get out of the way, and stop interfering. She responded by saying, "Arrest me." He moved her out of the way with his left hand while holding Campbell with his right and walked past her to the cruiser. She followed, shouting.

Finnegan stopped to search Campbell, and then moved him toward the rear door of the cruiser. Matson stepped in front of them, stood with her back against the door, spread her arms, and said, "No, no way, you're not taking him to jail." Finnegan told her to get out of the way, and she refused and again told him to arrest her. He moved her aside again, this time with his right hand, put Campbell in the cruiser, and arrested her. Matson said, "Good, I wanted you to arrest me." On cross-examination, Finnegan stated that he was not in fear of Matson at any time and that she never struck him, threatened him, or called him names.

[¶ 3] The court took judicial notice of the file in Matson's OUI case, which indicated that she had been released on bail, with conditions, in May 2001, and that the conditions remained in effect until the court found her not guilty in January 2002. Campbell and Matson testified to a story different from Finnegan's, in which Finnegan used excessive force against Matson. In its closing, the State noted that it did not allege disorderly conduct and that Matson had a right to say what she said, but it argued that Matson had interfered with Finnegan's arrest of Campbell by intimidation and force. The court found that Finnegan's testimony was credible, that Matson's testimony was inconsistent, and that it was unlikely that the events transpired as she had described them. The court found that Matson's conduct involved intimidation but not force and found her guilty of obstructing government administration and of violating a condition of release by committing new criminal conduct. The court sentenced Matson to pay fines.

[¶ 4] We review the sufficiency of the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a

reasonable doubt every element of the offense charged. *State v. Radley,* 2002 ME 150, ¶ 20, 804 A.2d 1127, 1133. Title 17-A M.R.S.A. § 751(1) provides: "A person is guilty of obstructing government administration if the person uses force, violence or intimidation or engages in any criminal act with the intent to interfere with a public servant performing or purporting to perform an official function." Because the court based its determination of guilt on a finding that Matson had used intimidation, not force, and because there is no doubt that, in arresting Campbell, Finnegan was a public servant performing an official function and that Matson intended to interfere with that arrest, the issue on appeal is whether the evidence supports a finding that her conduct involved intimidation within the meaning of the statute.

[¶ 5] We have interpreted the intimidation provision in section 751 once, in *State v. Janisczak,* 579 A.2d 736 (Me.1990). The defendant in that case interfered with an arrest by yelling profanities at officers, who were struggling with a large, violent suspect. We adopted a definition of intimidation as "[u]nlawful coercion, extortion, duress, or putting in fear." *Id.* at 738 (quoting BLACK'S LAW DICTIONARY 736 (5th ed.1979)). We then applied that definition to hold that

> [n]o reasonable trier of fact could find on the evidence presented that Janisczak's actions constituted unlawful coercion, extortion, or duress. Further, although all five of the officers who were present at the scene testified at trial, none stated that he was put in fear by the defendant. Nor did any officer present testimony from which a jury reasonably could infer that one or more of the offi-

cers was afraid of Janisczak or his actions.

*Id.*

[¶ 6] The State attempts to distinguish *Janisczak* on the basis that the defendant's conduct there consisted solely of speech, whereas Matson physically interfered with the arrest here. This argument is unconvincing. In holding in *Janisczak* that the evidence was insufficient to prove intimidation, we focused not on the lack of physical interference, but on the fact that the officers were not actually intimidated by the defendant's conduct. That analysis is controlling here. Finnegan admitted that he was not put in fear by Matson's conduct, and there is no basis for concluding that her actions constituted coercion, much less duress or extortion. The State presented no evidence that Finnegan was intimidated.[1]

[¶ 7] The State seems to suggest that Matson must have been guilty of obstructing government administration because she physically interfered with an arrest. However, physical interference without the use of force, violence, or the commission of a crime and which does not actually intimidate the police officer has not been made a crime. The Legislature could have drafted section 751 to prohibit any physical interference with a public servant performing an official function, but it chose not to do so. *Cf.* MODEL PENAL CODE § 242.1 (2001) ("A person commits a misdemeanor if he purposely obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle ...."). Or, having modeled the obstructing government administration statute on New Hampshire's, *see* 17-A M.R.S.A. § 751, 1975 cmt. (1983) (stating that section 751 is based on

---

1. The dissent utilizes the defense evidence to find intimidation. The trial court, however, disparaged the defense testimony, finding it "inconsistent" and an "unlikelihood" that events had occurred as Matson described them.

N.H. Rev. Stat. Ann. § 642:1), the Legislature could have adopted a separate statute similar to N.H. Rev. Stat. Ann. § 642:2 (1996), which prohibits physical interference with an arrest by the arrestee or another person. Instead, 17–A M.R.S.A. § 751–A (Supp.2002) only prohibits refusal to submit to arrest by the arrestee himself, and then only if it involves physical force or substantial risk of bodily injury. The Legislature chose to draft section 751 narrowly, and we have construed it narrowly. *See Janisczak*, 579 A.2d at 741–42 (Clifford, J., concurring) ("Because of the narrow construction required to be given to criminal statutes, I agree with the Court that the actions of Janisczak do not constitute intimidation within the meaning of 17–A M.R.S.A. § 751(1).").

[¶ 8] The evidence was insufficient to support Matson's conviction for obstructing government administration. Because that conviction cannot stand, there was also insufficient evidence to prove that Matson violated a condition of release by committing new criminal conduct.

The entry is:

Judgment vacated. Remanded for entry of judgment of acquittal.

Dissent: SAUFLEY, C.J., and ALEXANDER and LEVY, JJ.

ALEXANDER, J., with whom SAUFLEY, C.J., and LEVY, J., join, dissenting.

[¶ 9] I respectfully dissent. In reviewing a sufficiency of the evidence challenge to a criminal conviction, we must view the evidence and any inferences that can be drawn from the evidence most favorably to the result reached by the trial court. *State v. Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027; *State v. Black*, 2000 ME 211, ¶¶ 13–19, 763 A.2d 109, 112–14. Any ambiguities are resolved in favor of the judgment. *State v. Haven*, 2002 ME 38, ¶ 3, 791 A.2d 938, 939. In deciding the sufficiency of the evidence, we look to all the evidence presented by both the State and the defense, not just the State's evidence. *State v. Landry*, 428 A.2d 1204, 1207 (Me. 1981). The Court's opinion does not directly address the defense evidence. However, that evidence, interpreted most favorably to the trial court's result, suggests a considerably more violent and forceful confrontation between the defendant and the police officer than is suggested by the State's evidence which is the focus of the Court's discussion. The sum of all of the evidence, construed as required, indicates the following:

[¶ 10] After Officer Finnegan stopped the vehicle in which Sharon Matson was riding and asked the operator to get out of the car, Matson got out of the vehicle and began shouting at the officer, indicating that she would not tolerate an operating under the influence test or arrest of the operator. The officer then began performing field sobriety tests on the driver, while Matson continued shouting. After performing one field sobriety test, the officer testified that he ceased further testing because of Matson's continued shouting and obstructive actions. The officer was also sufficiently concerned regarding the safety and integrity of the situation that at this point he called for back-up assistance. The officer then indicated to the driver that he was under arrest for operating under suspension. At this point, Matson charged towards the officer shouting, "No, no fucking way. You are not arresting him."

[¶ 11] As the officer was moving the arrested driver towards the cruiser, Matson blocked his way and his entrance to the cruiser door. She refused the officer's request to move out of the way at which point, according to the defense evidence,

the officer had to forcibly push or pull Matson to the side, causing her to fall down. According to the defense evidence, Matson then got back up and came at the officer again, either as he was placing the arrestee in the cruiser or after he had placed the arrestee in the cruiser. Again, the officer had to push Matson back. This time less forcefully. Further shouting then occurred with Matson swearing at the officer and inviting him to arrest her. Matson was arrested at about the same time as a back-up officer arrived on the scene.

[¶ 12] The sum of this evidence indicates that Matson obstructed the officer's efforts to conduct field sobriety tests and take the driver into custody. The evidence indicates, essentially without dispute, that the officer was sufficiently intimidated by Matson's actions that he ceased doing field sobriety tests before he otherwise would have done so and he called for back-up assistance. Further, as the officer was attempting to put the arrestee into his vehicle, Matson physically obstructed the officer's efforts, leading to a physical confrontation between Matson and the officer requiring him to use force—Matson's evidence indicates considerable force—to move her out of the way and place the arrestee in the police cruiser.

[¶ 13] The obstructing government administration statute indicates that: "A person is guilty of obstructing government administration if the person uses force, violence or intimidation or engages in any criminal act with the intent to interfere with a public servant performing or purporting to perform an official function." 17–A M.R.S.A. § 751 (Supp.2002). There is no question that Matson intended to and did "interfere with a public servant performing or purporting to perform an official function."

[¶ 14] The Court's opinion indicates that there was insufficient evidence to support a finding that Matson used "force, violence or intimidation." Certainly, the officer's ceasing field sobriety tests and calling for back-up as a result of Matson's shouting, swearing, insults and confrontational behavior can reasonably be construed to support a finding of at least some degree of intimidation. Further, Matson's physical blocking of the officer's efforts to place the arrestee in his cruiser required the officer to deviate from what otherwise would have been his normal practice and to forcibly move Matson aside so he could complete his arrest. The evidence indicates that Matson then came at the officer a second time and again had to be restrained as she was objecting to the arrest.

[¶ 15] The Court cites *State v. Janisczak,* 579 A.2d 736 (Me.1990), to suggest that this evidence is insufficient to support a finding of fear, violence or intimidation. However, *Janisczak* must be distinguished from this case. The Court's opinion in *Janisczak* indicates that the confrontation there involved five officers and the one defendant and that no officer stated that he was "put in fear by the defendant." *Id.* at 738. Here, a lone officer was faced with two people, one who he was arresting and another who was completely out of control, combative and physically attempting to prevent the officer from performing his function. The officer certainly had sufficient concerns about the safety of the situation to deviate from his normal practice, suspend field sobriety tests, call for back-up and forcibly move Matson aside to terminate her physical obstruction of his arrest. These circumstances demonstrate sufficient force and intimidating behavior by Matson to support the conviction beyond a reasonable doubt. Accordingly, I would affirm the judgment of conviction on the charge of obstructing government administration.

[¶ 16] The conviction of violating a condition of release also must be affirmed. The transcript of the trial demonstrates that the parties and the court were aware that the court was examining and considering bail conditions applicable to Matson when it reviewed a charge of operating under the influence that had been pending against her. We may infer that those bail conditions included prohibitions on additional criminal activity or possession or consumption of alcoholic beverages, or both. Such conditions would be sufficient to support the finding by the court of a violation of a condition of release. The record transmitted to us does not include those bail conditions. However, where the record on appeal does not include evidence that was before the court by judicial notice or otherwise, on an issue that is subject to the appeal, the party taking the appeal is considered to have not preserved the point if the relevant evidence is not in the record transmitted to this Court. *State v. Dill,* 2001 ME 150, ¶ 10 n. 5, 783 A.2d 646, 650.

[¶ 17] Therefore, both convictions should be affirmed.