MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2017 ME 180
Docket:         Yor-16-548
Submitted
  On Briefs:  July 19, 2017
Decided:        August 15, 2017

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

STATE OF MAINE

v.

JOHN T. SIMONS

MEAD, J.

[¶1]  John T. Simons appeals from a judgment of conviction of operating under the influence (Class B), 29-A M.R.S. § 2411(1-A)(D)(2) (2016), entered by the trial court (York County, *Driscoll, J.*) following a jury trial.  Simons asserts that (1) the court erred when it denied his motion to suppress evidence from the traffic stop, (2) the court improperly allowed testimony regarding his performance on the horizontal gaze nystagmus (HGN) test, (3) there was insufficient evidence to support his conviction, and (4) the court erred when it determined that prospective jurors were impartial.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the jury could have found the following facts beyond a reasonable doubt.  *State v.*

*Hinkel*, 2017 ME 76, ¶ 2, 159 A.3d 854. On November 17, 2015, around 9:45 p.m., Officer Gregory Caldwell of the Kittery Police Department observed a vehicle leave the parking lot of a bar and enter a traffic rotary. He followed the vehicle and observed it accelerate quickly to forty-two miles per hour in a twenty-five-miles-per-hour zone. After following the vehicle for approximately 100 yards, Caldwell turned on his emergency lights to effectuate a traffic stop; the vehicle pulled over after travelling about another quarter mile.

[¶3] Caldwell approached the car and requested insurance and registration documents; he identified the driver as John Simons using Simons's driver's license. He observed Simons's hands to be "very shaky" when Simons was searching for his registration and insurance documents. Caldwell detected a strong odor of mint coming from Simons's car and breath, and he noticed a can of mints in the car. From his training, Caldwell knew that drivers who have been drinking may use mints to attempt to disguise the odor of intoxicants. Simons told the officer that he was coming from a nearby bar where he was a "door guy." Caldwell took the paperwork to his police cruiser where he reviewed it. Upon returning to Simons's vehicle, he smelled the odor of alcohol emanating from Simons's breath and inside the car. Simons told Caldwell that he had been drinking but had stopped at 5:00 p.m. Caldwell asked Simons if he

was willing to perform field sobriety tests to make sure that he was safe to drive. Simons agreed, and he "stumbled quickly but caught his balance" when getting out of the car. Outside the car, Caldwell could smell alcohol on Simons's breath from three to four feet away.

[¶4] Caldwell first led Simons through the HGN test. Simons swayed in small circular motions throughout the test, and Caldwell could smell the odor of intoxicants on Simons's breath and observed clues of impairment on the test. He next had Simons perform the walk-and-turn test, during which Simons "stepped out of the instructional phase position on multiple occasions" despite being told to remain in that position, lost his balance and broke the heel-to-toe position, lifted his arms up more than six inches to keep his balance, took a step off the line, did not touch his heel to his toe on several steps, and failed to turn properly. Caldwell then had Simons complete the one-leg-stand test. He observed Simons sway and raise his arms higher than six inches from his sides to keep his balance during the test. Caldwell arrested Simons for operating under the influence.[1]

---

[1] Caldwell subsequently administered a breath test to Simons, but the court ruled that the test results were inadmissible due to an improper observation period that compromised the reliability of the test.

4

[¶5]  On June 9, 2016, Simons filed a motion to suppress evidence from the traffic stop.  Following a hearing, the court (*Driscoll, J.*) denied the motion. The court found the following facts.  Caldwell observed Simons enter a traffic rotary and accelerate to seventeen miles per hour over the speed limit, and that Simons drove for a quarter mile after Caldwell activated his emergency lights. Caldwell did not, however, observe Simons operate his vehicle "in a manner that would [imply] or raise the issue of impaired driving."  Simons "fumbled somewhat" when producing his paperwork, and Caldwell initially smelled a strong odor of mint and saw a container of mints in the car but "did not smell alcohol, observe bloodshot eyes or any other indicia of impairment or alcohol consumption."  However, when Caldwell returned to Simons's vehicle, he "smelled the odor of alcohol from the vehicle."  He asked Simons if he had anything to drink that night; Simons responded that he last had a drink at 5:00 p.m. and was a door person at a nearby bar.  To isolate the source of the smell of alcohol, Caldwell asked Simons if he would step out of the car.  Simons complied, and Caldwell administered field sobriety tests.  The court found that Caldwell was credible and concluded that he had a reasonable articulable suspicion of facts sufficient to support both the traffic stop for speeding, and, as

the situation evolved, asking Simons to get out of the car and perform field sobriety tests.

[¶6] Jury selection was held on October 25, 2016. As part of voir dire, prospective jurors were directed to complete a questionnaire[2] that included the following question:

> 14. A person accused of a crime should be required to present at least some evidence to prove their innocence. *(Please circle one.)*
>
> Agree _____                    Disagree _____

Eighteen prospective jurors answered "Agree." The court (*Fritzsche, J.*) individually interviewed each prospective juror who answered in the affirmative to inquire further as to their beliefs and ability to follow the court's instructions. Simons objected to this process, expressing his concern that those jurors could not be rehabilitated.

[¶7] When questioned by both the court and counsel, several jurors indicated that they were confused by the question and had answered incorrectly and confirmed during the colloquy that they could follow the court's instructions on the law. The court excused several jurors for cause after they confirmed the belief that a defendant should present evidence of innocence or

---

[2] The record indicates that the questionnaire was prepared by both Simons and the State, who "were able to negotiate and work through and produce th[e] questionnaire by agreement."

6

seemed hesitant about whether they could follow the court's instructions. Simons objected to only one additional prospective juror on the basis of her response to Question 14, and that juror was also excused for cause by the court. Seven jurors who had answered Question 14 affirmatively were eliminated during the exercise of Simons's and the State's peremptory challenges. *See* M.R.U. Crim. P. 24(c). Of the jurors who were ultimately impaneled, four had initially answered "Agree" to Question 14; two of those jurors later told the court that they misread the question and intended to "Disagree," and two indicated that they were confused by the question and could follow the court's instructions on the law. Simons did not object to those jurors being seated.

[¶8] Immediately prior to the commencement of the trial, the court (*Driscoll, J.*) and counsel discussed various pretrial matters including Simons's objection, based upon lack of foundation, to Caldwell testifying about Simons's performance on the HGN test because Caldwell was not certified as "proficient" at that test. The court ruled that the testimony would be admissible, concluding that the issue of whether or not Caldwell was certified as proficient went to the weight—not the admissibility—of the evidence.

[¶9] At the trial, the jury heard testimony from Caldwell. In addition to testifying to the facts set forth herein, Caldwell testified that he had been with

the Kittery Police Department since January 2015 and had completed an eighteen-week program at the Maine Criminal Justice Academy. An entire week of his training focused on operating under the influence and included both classroom and first-hand, hands-on training. Caldwell was taught the procedures for the HGN, walk-and-turn, and one-leg-stand tests; a manual concerning detecting OUI was part of his curriculum. At the time of his interaction with Simons, Caldwell was in the process of being deemed "proficient" at the HGN test by the Academy.

[¶10] Following two days of deliberations, the jury returned a verdict of guilty. The court entered a judgment of conviction on the verdict, from which Simons now appeals.[3] *See* M.R. App. P. 2.

## II. DISCUSSION

A. Motion to Suppress

[¶11] Simons asserts that the court erred in determining that Caldwell had a reasonable articulable suspicion supporting his request that Simons exit

---

[3] Simons was convicted pursuant to 29-A M.R.S. § 2411(1-A)(D)(2) (2016) because he had a prior Class C conviction for operating under the influence. The court sentenced Simons to eight years of imprisonment, with all but eighteen months suspended; three years of probation; a ten-year license suspension; and a $2,100 fine. The Sentence Review Panel denied Simons leave to appeal his sentence. *State v. Simons*, No. SRP-16-549 (Me. Sent. Rev. Panel Jan. 26, 2017).

8

his vehicle and perform field sobriety tests, and thus erred in denying his motion to suppress.[4]

[¶12] "[A] field sobriety test, like any other investigatory stop, must be based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Wood*, 662 A.2d 919, 920 (Me. 1995) (quotation marks omitted). At the time of making an investigatory stop, a police officer must have "an articulable suspicion, objectively reasonable in light of all the circumstances, that the object of the search has committed or is about to commit a crime." *Id.* Whether an officer had an articulable "subjective suspicion of operating under the influence and the facts upon which that suspicion is based are factual findings reviewed for clear error," *State v. King*, 2009 ME 14, ¶ 6, 965 A.2d 52, and we will affirm the court's finding if it is supported by "any competent evidence in the record," *State v. McPartland*, 2012 ME 12, ¶ 13, 36 A.3d 881. "[T]he determination of whether the suspicion was objectively reasonable is a legal conclusion that we review de novo." *King*, 2009 ME 14, ¶ 6, 965 A.2d 52. "The only requirement we have imposed on the reasonable articulable suspicion standard is that an

---

[4] Simons does not challenge the initial stop of his vehicle for speeding.

officer's suspicion be more than mere speculation or an unsubstantiated hunch." *State v. Porter*, 2008 ME 175, ¶ 11, 960 A.2d 321.

[¶13]    Here, the suppression court found that Simons admitted to Caldwell that he had been drinking that evening; that Caldwell had observed Simons fumble with his documents and smelled alcohol coming from Simons's vehicle; and that Caldwell observed Simons driving seventeen miles per hour over the speed limit.  Caldwell also testified that he asked Simons to exit the car and perform field sobriety tests in order to "make sure that [Simons] was safe to drive," supporting the trial court's implicit conclusion that Caldwell harbored a subjective belief that Simons was impaired.  The motion court did not err in finding that Caldwell entertained a reasonable articulable suspicion that Simons was impaired, thus justifying the administration of the field sobriety tests. *See State v. Sylvain*, 2003 ME 5, ¶ 18, 814 A.2d 984 (concluding that it was "objectively reasonable for [an] officer to entertain a suspicion that [a] driver may be impaired by . . . alcohol" when the officer observed the driver's bloodshot eyes and the driver admitted to consuming two beers); *cf. State v. Nelson*, 638 A.2d 720, 722 (Me. 1994) (determining that there was "a clear deficiency in the evidence supporting the reasonableness of [an officer's] suspicion" that a defendant was operating under the influence when "the officer

observed nothing to support his suspicion" other than the defendant's "consumption of a single can of beer over the course of nearly one hour"). The court did not err by denying Simons's motion to suppress evidence from the traffic stop.

B.    HGN Test

[¶14]  Simons contends that the court erred by allowing the jury to hear evidence regarding his performance on the HGN test because the proper foundation for its admission was not established, compromising the test's reliability.  We review an evidentiary ruling "for clear error and an abuse of discretion."  *Hinkel*, 2017 ME 76, ¶ 7, 159 A.3d 854.

[¶15]  We have taken judicial notice of the reliability of the HGN test "for purposes of establishing criminal guilt in cases involving operating under the influence," and concluded that "the results of [an] HGN test should be admissible if a proper foundation is laid for their introduction in evidence." *State v. Taylor*, 1997 ME 81, ¶¶ 10, 12, 694 A.2d 907.  A proper foundation consists of two elements: evidence that the officer who administered the test "is trained in the procedure," and evidence that "the test was properly administered."  *Id.* ¶ 12.  In *Taylor*, we determined that an officer who "was trained at a three-day course taught by instructors and has tested numerous

subjects both in the field and in controlled situations" was qualified to testify as an expert on the HGN test. *Id.* ¶ 12 n.9. More recently, in *State v. Hinkel*, we held that the State laid a proper foundation pursuant to *Taylor* when the officers who administered the HGN test "testified that they graduated from the Maine Criminal Justice Academy, where they received training on the administration of field sobriety tests, including the HGN test." 2017 ME 76, ¶ 8, 159 A.3d 854.

[¶16] Here, Caldwell testified that he completed a program at the Maine Criminal Justice Academy where he received both classroom and hands-on training on field sobriety tests, including the HGN test. Accordingly, we conclude that the court did not err in determining that Caldwell was qualified to testify as an expert on the test. Regarding the second element of the necessary foundation, Caldwell testified in detail concerning how he administered the HGN test to Simons, and Simons points to no record evidence demonstrating how the HGN test administered by Caldwell deviated from standards prescribed in the National Highway Traffic Safety Administration manual. *See id.* ¶ 9. Even if he had, an officer's "failure to strictly adhere to the specific procedures promulgated by NHTSA does not render evidence regarding those field sobriety tests inadmissible," and Simons was free to

cross-examine Caldwell about any failures to adhere to protocol. *Id.* (quotation marks omitted). Therefore, the court did not err or abuse its discretion in admitting evidence regarding the HGN testing.

C. Sufficiency of the Evidence

[¶17] Simons asserts that there was insufficient evidence to support his conviction for operating under the influence. "When determining whether the record contained enough evidence to support a criminal defendant's conviction, we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find every element of the offense beyond a reasonable doubt." *State v. Atkins*, 2015 ME 162, ¶ 20, 129 A.3d 952 (quotation marks omitted). The fact-finder is permitted to "draw all reasonable inferences from the evidence." *State v. Soucy*, 2012 ME 16, ¶ 10, 36 A.3d 910 (quotation marks omitted). Testimony that the defendant showed indications of intoxication "can be sufficient to support a finding that the defendant was under the influence." *State v. McCurdy*, 2002 ME 66, ¶ 10, 795 A.2d 84. The jury may also consider a defendant's performance on field sobriety tests as evidence of intoxication, though such performance is not dispositive of guilt. *See State v. Fay*, 2015 ME 160, ¶ 7, 130 A.3d 364; *Taylor*,

1997 ME 81, ¶ 13, 694 A.2d 907 (stating that results of an HGN test are admissible as circumstantial evidence of a defendant's intoxication).

[¶18]  Here, the jury heard testimony that Simons was speeding, had admitted to drinking earlier in the evening, had the smell of alcohol on his breath, fumbled when handling documents, stumbled when exiting his vehicle, and performed poorly on three field sobriety tests.  There was sufficient evidence in the record for the jury to rationally find, beyond a reasonable doubt, that Simons operated a vehicle while impaired, "however slightly or to any extent," by alcohol.[5]  *See Atkins*, 2015 ME 162, ¶ 1, 129 A.3d 952; 29-A M.R.S. § 2411(1-A)(D)(2); *see also Hinkel*, 2017 ME 76, ¶¶ 2-5, 13, 159 A.3d 854; *State v. Just*, 2007 ME 91, ¶¶ 4, 9-10, 18, 926 A.2d 1173; *McCurdy*, 2002 ME 66, ¶ 11, 795 A.2d 84.

D.    Juror Impartiality

[¶19] Simons asserts that the court erred in concluding, after conducting a more extensive colloquy with the jurors, that jurors who initially answered "Agree" to Question 14 on the juror questionnaire were impartial. We ordinarily review "the trial court's finding of juror impartiality for clear

---

[5]  At trial, Simons stipulated to his prior OUI conviction, and the judgment and commitment for that conviction was admitted in evidence by agreement, although the document was not presented to the jury.  *See State v. Atkins*, 2015 ME 162, ¶ 21 n.5, 129 A.3d 952.

14

error" and "the conduct of voir dire for an abuse of discretion." *State v. Holland*, 2009 ME 72, ¶ 49, 976 A.2d 227. However, because Simons did not object to any of the jurors who were impaneled, our review of the jurors' impartiality is for obvious error. *See State v. Logan*, 2014 ME 92, ¶ 16, 97 A.3d 121; *State v. Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066. The court's determination of juror impartiality "is accorded substantial deference because of the [court]'s ability to observe the juror and assess credibility." *State v. DePhilippo*, 628 A.2d 1057, 1059 (Me. 1993) (quotation marks omitted).

[¶20] "When a juror's impartiality is questioned, the court should interview the juror to determine whether it is satisfied with the juror's ability . . . to participate in reaching a verdict based on the evidence and the law." *State v. Rollins*, 2008 ME 189, ¶ 12, 961 A.2d 546 (quotation marks omitted). A juror's assurance to the court that he or she could be impartial is significant in this determination. *See State v. Dyer*, 2007 ME 118, ¶ 15, 930 A.2d 1040; *see also Rollins*, 2008 ME 189, ¶ 12, 961 A.2d 546.

[¶21] Here, the court individually interviewed each potential juror who had answered "Agree" to Question 14, and counsel for both Simons and the State also had the opportunity to question each prospective juror about his or her response. Of the four jurors who answered Question 14 affirmatively and

were ultimately impaneled, when questioned, two said that they had misread the question and intended to "Disagree" with the statement in Question 14, and the other two expressed confusion about the question and expressly indicated that they could follow the court's instructions on the law.[6]   Therefore, considering both the record evidence and our deference to the court's determination of juror impartiality, we conclude that there was neither an abuse of discretion in the way the court conducted voir dire nor obvious error in the court's conclusion that the jurors were impartial.

[¶22]   Nonetheless, we note with disapproval the use of a voir dire question that presents an utterly incorrect statement of law and asks jurors to agree or disagree with the policy pronouncement contained therein. Regardless of whether an individual juror may disagree with an aspect of law, the true objective of voir dire is to determine whether jurors are able to be impartial and follow the court's instructions on the law, even if the juror may

---

[6] At trial, Simons was apparently persuaded that the impaneled jurors were impartial, as he stated in his opening argument:

> [O]ne of the reasons why we chose all thirteen of you is because you all universally rejected two hypotheticals.  The first one was: if someone is charged with a crime, they're probably guilty.  You all universally said you disagreed with that. . . . And you all universally rejected the notion that if someone is charged with a crime, they should show some evidence of their innocence.  You universally rejected that.  That's one of the reasons why the thirteen of you are on this jury.  And that's important because, without realizing it, you all actually embraced a foundational bedrock principle of our legal system and that is a person charged with a crime is presumed to be innocent.

disagree with the particular law. *See* Alexander, *Maine Jury Instruction Manual* § 2-3 at 2-5 (2017 ed.) ("The predominant purpose of questions asked of jurors, whether oral or written, must be development of information supporting the objective of impaneling a qualified and impartial jury."). "Questions that are unrelated to a prospective juror's knowledge, bias, or predisposition . . . are improper." *Id.* Specifically, questions that "cause[] the prospective jurors to adopt a position on the law without the benefit of the court's instructions, and without reference to the jurors' duty to apply the law as instructed and not as each juror saw fit," are *not* appropriate questions. *Grover v. Boise Cascade Corp.*, 2004 ME 119, ¶ 20, 860 A.2d 851. The introduction of an erroneous legal concept presents the danger that jurors may continue to consider and ultimately embrace the erroneous notion. We note finally that asking a juror to agree or disagree with a legal tenet injects unnecessary confusion into an already intrusive process.

The entry is:

Judgment affirmed.

Tina Heather Nadeau, Esq., The Law Office of Tina Heather Nadeau, PLLC, Portland, for appellant John T. Simons

Kathryn Loftus Slattery, District Attorney, and Nicholas Heimbach, Asst. Dist. Atty., Prosecutorial District #1, Alfred, for appellee State of Maine

York County Unified Criminal Docket docket number CR-2015-544
FOR CLERK REFERENCE ONLY