STATE OF MAINE                                  UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss                                  DOCKET NO. CR-19-2001


STATE OF MAINE

v.                                              ORDER ON DEFENDANT'S
                                                MOTION TO SUPPRESS
HALEY RODWAY,

            Defendant


Defendant seeks to suppress evidence obtained by law enforcement officers. She argues

law enforcement's detention of defendant while they investigated the operator of the vehicle was

not permitted, that defendant's arrest was illegal, and that 17-A M.R.S. § 751 is void for

vagueness. Defendant does not challenge the initial stop of the vehicle. For the following

reasons, the motion is denied.

FACTS

Westbrook Police Officer Joshua Morrow has worked in law enforcement for

approximately four years.  On April 14, 2019, shortly after midnight, he was following a vehicle

with the rear registration plate light that was not working on William Clarke Drive in

Westbrook.  William Clarke Drive is a major road that travels through Westbrook.  Officer

Morrow turned off his cruiser's lights twice to make sure the vehicle's registration light was not

working.  Officer Morrow activated his blue lights and stopped the vehicle after it turned at the

traffic light from William Clarke Drive on to New Gorham Road.

The vehicle stopped beside a grassy area with a sidewalk farther in. Officer Morrow did

not observe foot traffic in the area or other things going on. As they stood on the side of this

road, Officer Morrow had concerns for the officers and the vehicle occupants, especially for

defendant stepping out of the vehicle on to the roadway.  Officer Bleicken, who arrived at the

scene as backup based on Officer Morrow's request, also had concerns about oncoming traffic


1

because New Gorham Road is a regular two-way road with limited space for vehicles. The video reveals there was traffic on New Gorham Road.

A male and female were seated in the vehicle. The female passenger was the defendant, Haley Rodway. Officer Morrow smelled an odor of intoxicants coming from the vehicle but could not determine which occupant the smell was coming from. Defendant advised she was heavily intoxicated. Officer Morrow told the individuals in the vehicle to wait, returned to his cruiser, and requested officer backup for officer safety and to maintain scene security.

Westbrook Police Officer Kipp Bleicken has worked in law enforcement for four and one half years. When Officer Bleicken arrived, Officer Morrow advised that he was going to conduct field sobriety tests with the driver and that there was a female passenger who did not want to identify herself and who was agitated.

Officer Morrow returned to speak to the driver at the driver's side of the vehicle. They discussed where the individuals were going and that the officer could smell the odor of intoxicants. The driver said he had had one drink, a beer, earlier in the evening. He also stated he had smoked a joint earlier. Officer Morrow did not observe other signs of impairment with regard to the driver but the purpose of remaining on the roadside was to determine whether there were other signs of impairment by conducting field sobriety tests.

Officer Morrow requested that the driver step out of the vehicle so the officer could conduct field sobriety tests to make sure the driver was safe to operate the vehicle. The driver stepped out of the vehicle and stood at the rear of his car and in front of the cruiser. As part of the OUI investigation, Officer Morrow asked the driver questions about standardized field sobriety testing and the driver agreed to answer.

As Officer Bleicken approached the vehicle, the passenger door of the vehicle opened. It appeared defendant was going to exit the vehicle and her feet were out of the vehicle. He advised that defendant stay in the vehicle. She put her feet back in the vehicle and Officer Bleicken closed the door. Officer Bleicken wanted the officers to be able to focus on the driver and he

2

wanted to perform his duties as backup officer. After speaking with defendant, Officer Bleicken returned to the rear of the car so he could see both Officer Morrow and defendant.

After a period of time, the passenger side door opened again and defendant exited the vehicle. Defendant yelled loudly to Officer Morrow and the other officers and questioned what was happening and whether the driver was being detained. Office Morrow was not able to continue with his questioning of the driver. He stepped to the side to address her and focus his attention on her and her questions. Defendant sounded agitated and directed her questions to Officer Morrow. He did not answer her questions.

Officer Bleicken approached defendant and told her that the driver was being detained. She argued with Officer Bleicken about the detention and he tried to explain the field sobriety test process. She stated she was not f-ing stupid. Officer Bleicken told defendant that should get back in the vehicle or she would go to jail. Defendant declared that Officer Bleicken should take her to jail. Officer Bleicken asked defendant what her problem was and that they were halfway through the process of field sobriety tests. Sergeant Loranger told defendant the same thing Officer Bleicken had told her about remaining in the vehicle and arrest and stated that this was her last chance. At that time, everyone was focused on defendant. The driver was pleading with defendant to get back in the vehicle. In Officer Bleicken's view, she did not want to walk away or stand somewhere else; she wanted to interfere with the officers' field sobriety testing. Officer Morrow was not able to complete the field sobriety tests because he was once again distracted by defendant and focused his attention on her and her argument with Officer Bleicken.

As defendant sat down in the vehicle, Officer Bleicken began to close the door. Defendant again yelled, stated "nah," and began opening the door. Officer Bleicken latched the door closed and used his knee to hold the door closed so defendant could not open it. Defendant pushed the door with her hands. She then turned, braced herself on the center console, and began kicking the door to open it. Officer Bleicken believed defendant was holding the door handle open to allow her to open the door but the door was latched when she turned and began kicking.

3

Sergeant Loranger told Officer Bleicken to take defendant out and that she was going to jail because she had been warned. Officer Bleicken opened the door. Defendant held on to the center console and refused to get out of the vehicle. Officer Bleicken and Officer Morrow pulled defendant from the vehicle and a struggle ensued. She continued flailing and kicked Officer Bleicken in the leg. He told her not to kick at officers. The officers forced defendant to the ground to stop her from flailing, placed her in handcuffs, and arrested her. She was yelling profanity at the officers during this time and advised that her uncle was an attorney in Cumberland County. Officer Bleicken responded that that was fine and all she had to do was stay in the car. The time between Officer Bleicken's arrival at the scene and defendant's arrest was fewer than ten minutes.

Officer Morrow was not able to finish his field sobriety testing of the driver. Sergeant Loranger completed the field sobriety tests. The driver was subsequently allowed to leave in his vehicle.

Officer Morrow agreed that when defendant spoke to him, she did not approach, threaten, or intimidate him or use force against him when she asked questions of Officer Morrow. Officer Bleicken agreed that defendant did not use force, threats, or intimidation against the officers until she entered the car a second time and began pushing, shoving, and kicking in her effort to get out of the vehicle and continue to delay the field sobriety testing of the driver

The WatchGuard system for Officer Morrow's cruiser was activated but the audio remote device was not working. The WatchGuard System for Officer Bleicken's cruiser was activated and the audio was working. (State's Ex. 1, Morrow Video; State's Ex. 2, Bleicken Video.) The court has viewed the WatchGuard videos from the first observation of the vehicle until defendant's arrest and her post-arrest discussion with Officer Bleicken. The videos confirm the officers' testimony.

CONCLUSIONS

1. Field Sobriety Tests for Driver

4

"[A] field sobriety test, like any other investigatory stop, must be based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." State v. Simons, 2017 ME 180, ¶ 12, 169 A.3d 399 (quotation marks omitted). "At the time of making an investigatory stop, a police officer must have an articulable suspicion, objectively reasonable in light of all the circumstances, that the object of the search has committed or is about to commit a crime." Id. (quotation marks omitted). The reasonable articulable suspicion standard requires the "officer's suspicion be more than mere speculation or an unsubstantiated hunch." Id. (quotation marks omitted). Based on the above facts, including the smell of intoxicants coming from the vehicle and the driver's admission regarding consuming alcohol and smoking a joint, Officer Morrow had reasonable articulable suspicion to support his request that the driver exit his vehicle to conduct field sobriety tests. See id. at ¶ 13.

2.     Arrest of Defendant

a.   Detention of Defendant

Defendant was told to remain inside the car while police conducted field sobriety tests with the driver of the vehicle. Defendant challenges this seizure. The U.S. Supreme Court in Brendlin v. California endorses a police officer's ability to require passengers to remain in a car during an investigatory stop. 551 U.S. 249, 257 (2007) ("An officer who orders one particular car to pull over acts with an implicit claim of right based on fault of some sort, and a sensible person would not expect a police officer to allow people to come and go freely from the physical focal point of an investigation into faulty behavior or wrongdoing."). It is reasonable that an officer conducting a traffic stop, "will not let people move around in ways that could jeopardize his safety." Id. at 258; see also Maryland v. Wilson, 519 U.S. 408, 414-15 (1997). Detention of defendant was lawful when officers believed that their safety and defendant's safety may have been in danger by allowing defendant to exit the car.

b.   Arrest of Defendant

Defendant argues that police lacked probable cause to believe defendant committed a crime and her arrest was illegal. Defendant also argues that she in fact did not commit the crime

5

with which she is charged. See (Def.'s Mem. in support of Mot. to Suppress and Dismiss, 7-10). The determination of guilt is a question for the jury and not appropriate at this juncture. See State v. Collins, 297 A.2d 620, 633 (Me. 1972).

Probable cause to arrest exists if based on the information available, a prudent and cautious person would believe that a crime was or is being committed. State v. Palmer, 2018 ME 108, ¶ 10, 190 A.3d 1009. "Though only a jury can resolve reasonably disputed issues of fact, whether a given set of facts constitutes probable cause is a legal question." Jordan v. Town of Waldoboro, No. 18-2062, 2019 U.S. App. LEXIS 35575, at *16 (1st Cir. Nov. 27, 2019).

Defendant was arrested for obstructing government administration. "A person is guilty of obstructing government administration if the person intentionally interferes by force, violence or intimidation or by any physical act with a public servant performing or purporting to perform an official function." 17-A M.R.S. § 751 (2019).

In a similar case, State v. Matson, a police officer pulled over a vehicle with a license plate light out and illegal attachment of plates, and based on suspicion of operating under the influence. 2003 ME 34, ¶ 2, 818 A.2d 213. The officer asked the driver to step out of the car in order to conduct field sobriety tests. Id. While the officer attempted to conduct the field sobriety tests, the passenger of the car got out of the car and began yelling at the police officer. Id. The officer instructed the passenger that she could be arrested for obstructing government administration, not to interfere, and to return to the car. Id. The passenger refused and continued shouting. Id. The officer was able to conduct only one test because the officer was unable to call in a backup officer and the passenger continued yelling at the officer. Id. The officer placed the driver under arrest and as the officer escorted the driver to the cruiser, the passenger moved in front of the officer and refused to move. Id. The passenger then stood in front of the police cruiser's door with her back against it. Id. The officer told the passenger to move, the passenger refused to move, and was moved aside by the officer. Id. The officer placed the driver inside the cruiser. Id. The officer then arrested the passenger for obstructing government administration. Id. In Matson, the Law Court overturned the defendant's

6

conviction for obstructing government administration because the officer was not intimidated. Id. at ¶ 6.

The Law Court instructed that if the Legislature wanted physical interference with a public servant performing an official function to be a crime, the law must be changed. Id. at ¶ 7. In response, the Legislature amended section 751 to its current form. In doing so the Legislature stated:

> The bill addresses a defect in the statute prohibiting obstruction of government administration revealed by the recent case of State v. Matson, 2003 ME 34, 818 A.2d 213. In Matson, the defendant had been convicted under the statute for physically interfering with the arrest of another person. Because the physical interference, intentionally standing in the way and refusing to move, was held to constitute something less than "force, violence or intimidation," the conviction was reversed.
>
> The focus of the crime is intentional physical interference with an official function, not "intimidation" of an officer. Harassing speech alone is not sufficient, but when it is accompanied by a physical act that actually interferes with an official function, the further requirement of "intimidation" is unnecessary.

L.D. 1844, Summary (121st Legis. 2003).

The question currently before the court, is whether Officer Bleicken had probable cause to believe that defendant intentionally interfered with the officers' performance of their official duties through a physical act. See 17-A M.R.S. § 751. Defendant's physical acts consisted of repeatedly trying to get out of the car after being instructed to remain inside, exiting the car and yelling at Officer Morrow as he attempted to conduct field sobriety tests with the driver, and attempting to open the car door by kicking as Officer Bleicken braced against it. Officer Morrow had to stop his investigation more than once because he was distracted by defendant's conduct. Officer Bleicken reasonably believed that the intention behind defendant's acts was to interfere with the ongoing field sobriety tests. A prudent and cautious person would believe that defendant's physical acts interfered with the officers' performance of their official duties. See Palmer, 2018 ME 108, ¶ 10, 190 A.3d 1009. Officer Bleicken had probable cause to arrest defendant.

3.     <u>Void for Vagueness 17-A M.R.S. § 751</u>

Defendant argues that 17-A M.R.S. § 751 is void for vagueness because it does not specify what physical act might be considered interference and the act fails to connect the interference and "the physical act with a public servant." (Def.'s Mem. in support of Mot. to Suppress and Dismiss, 10-12.)

"An ordinance is improperly vague when its language either forbids or requires the doing of an act in terms so vague that people of common intelligence must guess at its meaning, or if it authorizes or encourages arbitrary and discriminatory enforcement." <u>Town of Baldwin v. Carter</u>, 2002 ME 52, ¶ 10, 794 A.2d 62 (quotation marks and citations omitted). Section 751 is not vague. The statute prohibits a person from intentionally interfering with a public servant performing an official function by way of force, violence, intimidation or any physical act. 17-A M.R.S. § 751. The use of the term "physical act" is not overly broad. The physical act must be connected to interference and be conducted with the intent to interfere with a public servant performing an official function. <u>See</u> L.D. 1844, Summary (121st Legis. 2003).

The entry is

The Defendant's Motion to Suppress is DENIED.

Date: December 11, 2019

Nancy Mills
Justice, Superior Court

8